IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) | CASE NO.: 1:08 CV 196 |
| Appellant, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| VP BUILDINGS, INC., | ) ) | MEMORANDUM OPINION AND ORDER |
| Appellee. | ) ) | |

This matter is before the Court upon an appeal from a December 21, 2007 Order of the United States Bankruptcy Court for the Northern District of Ohio.  (ECF # 1.)  Before the Bankruptcy Court, Appellant National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union") sought allowance of an administrative expense claim against Appellee VP Buildings, Inc. and certain affiliated entities (collectively the "VP Debtors").[1]  The VP Debtors objected to the allowance of this claim, and sought judgment in their favor disallowing the administrative expense claim to the extent that the claim accrued post-confirmation.  The Bankruptcy Court ultimately denied National Union's request for administrative expense status to the extent that it sought payment of claims paid post-confirmation or claims estimated to be paid in the future.  Hence, the Bankruptcy Court granted summary judgment to the VP Debtors on National Union's administrative expense claim.

On appeal, National Union seeks reversal of the summary judgment granted to the VP

---

[1] The VP Debtors include VP Buildings, Inc., United Panel, Inc., Varco Pruden International, Inc., VP-Graham, Inc., and LTV-Walbridge, Inc. – all subsidiaries of the LTV Corporation.

Debtors on its administrative expense claim. For the reasons that follow, the decision of the Bankruptcy Court is AFFIRMED.

**I.**

The following constitutes a brief history of the background relevant to the instant bankruptcy appeal: On December 29, 2000, the VP Debtors filed voluntary Chapter 11 petitions. On December 17, 2003, the Bankruptcy Court confirmed the VP Debtors' First Amended Joint Plan of Liquidation and dissolved the bankruptcy estates.

National Union provided insurance coverage to the VP Debtors both before and after they filed the Chapter 11 petitions. More specifically, from 1987 through 2001, National Union provided the VP Debtors with workers' compensation, automobile liability and general commercial liability insurance coverage. In September 2003, National Union filed administrative expense claims for "premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and related costs incurred after the date of their bankruptcy petitions." (ECF # 16 at 17.) The VP Debtors challenged the administrative expense claims.

In June 2004, the Bankruptcy Court entered an agreed order compelling arbitration of this dispute. Pursuant to the Order, the award was to establish the amount of Nation Union's post-petition claims, and the Bankruptcy Court would then determine whether such claims were administrative expenses. National Union claims that, as determined in the arbitration, the amount of its claim against the VP Debtors is $993,769.00.[2] (*Id*. at 18-19.)

National Union and the VP Debtors filed cross–motions for summary judgment on

---

[2] The VP Debtors, however, have asserted that this amount was never determined to be properly allocable by the arbitration panel. (ECF # 19 at 7, n.3.) Further, the VP Debtors state that they "have not substantiated that they are liable for such amount." (*Id.*)

National Union's administrative expense claim. In resolving the Motions, the Bankruptcy Court stated the following:

> It is undisputed that VP Debtors' obligation to reimburse National Union for loss deductibles does not arise until National Union actually pays such claims. It is further undisputed that National Union seeks administrative expense status for claims that it paid post-confirmation and claims that have not yet arisen and are simply estimates by National Union of potential future payments. Pursuant to the terms of the VP Debtors' confirmed plan, the estates of the VP Debtors were dissolved as of the plan's effective date. Accordingly, the VP Debtors' bankruptcy estates ceased to exist as of the plan's effective date, December 17, 2003. The issue then is whether National Union is entitled to an administrative expense claim for expenses that did not arise, pursuant to the terms of the agreement with VP Debtors, until after the VP Debtors ceased to exist.

(ECF # 1 at 7-8 (internal citations omitted).) In the December 21, 2007 Memorandum of Opinion and Order, the Bankruptcy Court found that National Union's request for administrative expense status failed in two regards. First, because the claims at issue arose post-confirmation, the Bankruptcy Court found that they cannot be said to have preserved the estate under 11 U.S.C. § 503(b). (*Id.* at 8.) Second, because National Union sought payment of estimated claims that it may, or may not, have to pay at some future date, the Bankruptcy Court determined that such expenses are not "actual" as required by § 503(b). (*Id.*) Based upon these findings, the Bankruptcy Court denied National Union's request for administrative expense status to the extent that it sought payment of claims paid post-confirmation or claims estimated to be paid in the future, and granted summary judgment to the VP Debtors accordingly. (*Id.* at 11.)

**II.**

According to National Union, the issue here is whether it is entitled to payment for the insurance coverage it provided to the VP Debtors' bankruptcy estates for part of the period after filing the bankruptcy petition, but before the confirmation of the liquidating plan, specifically for

2001.  (ECF # 16 at 6.)  In its Opening Brief, National Union asserts that the relevant payment terms were set forth in two documents, namely the 1999 Payment Agreement and the 2001 Schedule of Policies and Payment Obligations, which required the VP Debtors to partially reimburse many of the payments made by National Union.  (*Id.* at 8-10.)  National Union explains that the reimbursements took place in various forms, which it summarizes as follows:

> National Union was responsible for claims after 2001 for occurrences that fell within the 2001 policies but had not yet been reported, and for additional costs on claims already reported.  In turn, the Debtors were obligated to reimburse National Union for these payments. These obligations remained in force until all were paid and were expressly agreed to be part of the price that the Debtors agreed to pay for the workers' compensation insurance coverage that National Union provided for the post-petition, pre-confirmation period.

(*Id.* at 13.)[3]  National Union contends that the insurance coverage it provided post-petition was necessary to the VP Debtors' continued operations and conferred benefits on the bankruptcy estates.  (*Id.* at 14-16.)  As such, National Union asserts that the claim is entitled to administrative expense priority.  (*Id*. at 21.)

From a policy perspective, National Union argues:

> It makes perfect sense that buying insurance would be deemed part of the actual and necessary cost and expense of preserving the estate and, thus, entitled to administrative priority.  Without the priority, no one would sell insurance to a debtor in possession, and all hope of keeping the business running as a "going concern" for the eventual benefit of creditors would be lost.

(*Id.* at 23 (internal citation omitted).)  National Union contends that, because the VP Debtors understood the obligations associated with purchasing the insurance and obtained the benefits of

---

[3] National Union states that the loss-sensitive premiums and reimbursement requirements worked to the VP Debtors' advantage, in that, rather than paying a large up-front premium in exchange for National Union paying the entire loss and bearing more of the risk, the VP Debtors paid a much lower premium up front, shared the cost with National Union, and paid their deductibles over time. (ECF # 16 at 13.)

such coverage, they cannot now avoid paying for it.  (*Id.* at 24.)

### III.

National Union has appealed the December 21, 2007 Order of the Bankruptcy Court pursuant to 28 U.S.C. § 158, and this Court shall review its conclusions of law *de novo*.  *See In re Made in Detroit*, 414 F.3d 576, 580 (6th Cir. 2005).

The statute relevant to this appeal, entitled "Allowance of administrative expenses," provides that administrative expense status shall be allowed for "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  The Sixth Circuit applies what is known as the "benefit to the estate test," which allows administrative expense status only if:  (1) the debt arose from a transaction with the bankruptcy estate and (2) it directly and substantially benefitted the estate.  *See In re Sunarhauserman, Inc.*, 126 F.3d 811, 816 (6th Cir. 1997).  National Union bears the burden of demonstrating its entitlement to an administrative expense priority by a preponderance of the evidence.  *See In re Liberty Fibers Corp.*, 383 B.R. 713, 716 (E.D. Tenn. 2008).  Further, the Sixth Circuit has instructed that administrative expense priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of creditors.  *See id.* at 717.

As noted above, the Bankruptcy Court found that, because the claims at issue arose post-confirmation, they cannot be said to have preserved the estates under § 503(b).  The Bankruptcy Court made this determination based upon the fact that the bankruptcy estates ceased to exist as of December 17, 2003, the date it entered its Order confirming the First Amended Joint Plan of Liquidation.  Despite National Union's arguments to the contrary, courts within this district have indeed recognized the termination of the estate upon confirmation.  *See, e.g.*, *In re HRP Auto*

*Ctr., Inc.*, 130 B.R. 247, 256 (Bankr. N.D. Ohio 1991) (finding that the bankruptcy estate "ceases to exist upon confirmation"); *see also Guy v. Terex Corp.*, No. 91-3687, 1992 WL 88978, at *4 (6th Cir. April 30, 1992) ("Because there is no need to preserve an estate that has been terminated, costs that are incurred after that time are not administrative expenses of the estate."). Because National Union's post-confirmation claims cannot be said to have preserved the estates, which terminated on December 17, 2003, the Bankruptcy Court properly denied such claims administrative expense status.

The Bankruptcy Court likewise found that, because National Union sought payment of estimated claims that it may, or may not, have to pay at some future date, such expenses are not "actual" as required by § 503(b). This Court agrees that estimates of future claims are not "actual" as required by the statute. That is, the relevant test requires that the actual, necessary costs and expenses the of preserving the estate must result in a benefit to the estate. Thus, the estate must receive a real benefit from the transaction before administrative expense priority will be assigned. In this case, National Union seeks administrative expense status for speculative future claims arising post-confirmation that cannot be said to benefit the estates. As recognized by the Bankruptcy Court, such claims, by definition, are not actual under the statute.

Finally, this Court would be remiss in failing to address National Union's argument that the Bankruptcy Court's ruling results in a windfall to the VP Debtors, which may have a chilling effect on the willingness of insurance companies to provide coverage after the filing of a bankruptcy petition. There exists no dispute that the insurance allowed the VP Debtors to operate legally during the bankruptcy. To that end, the VP Debtors paid premiums to National Union under the policy, which were administrative expenses of the estates. In this way, both

National Union and the VP Debtors received the benefit of their insurance bargain.  Thus, there exists no windfall and no resulting chilling effect under these circumstances.

## IV.

The Court has reviewed the December 21, 2007 Order of the Bankruptcy Court *de novo*. Moreover, it has considered all of the filings of the parties, the oral arguments presented by counsel, and the relevant law.  Based upon this review, the Court finds no error in the December 21, 2007 Order.  Thus, the Bankruptcy Court's denial of National Union's request for administrative expense priority status is AFFIRMED.  This case is TERMINATED.

IT IS SO ORDERED.

                                         s/Donald C. Nugent
                                         DONALD C. NUGENT
                                         United States District Judge

DATED: September 29, 2008